UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 4:22 CR 429 CDP / SRW |
| ) | |
| v. ) | |
| ) | |
| DARIUS T. GRIFFIN, ) | |
| ) | |
| Defendant. ) | |

## **DETENTION ORDER**

On September 19, 2022, defendant DARIUS T. GRIFFIN appeared before the undersigned with counsel for a detention hearing on the motion of the United States that defendant be detained in the custody of the United States Marshals Service until trial under the Bail Reform Act of 1986, 18 U.S.C. § 3142. (Doc. 4.)

On August 3, 2022, the grand jury in this judicial district indicted defendant Griffin for being a felon in possession of ammunition on July 21, 2022, in the City of St. Louis, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.)

On August 10, 2022, defendant Griffin was arrested on this indictment in Atlanta, Georgia. On that day he appeared with counsel before United States Magistrate Judge Christopher C. Bly for an initial appearance. The United States Attorney for the Northern District of Georgia moved for defendant's pretrial detention. Also on August 10, 2022, the Pretrial Services Office in Atlanta submitted a written bail report that recommended defendant be detained until trial. Based on defendant's consent, on August 10, Judge Bly ordered the Marshals Service to transport defendant Griffin in custody to this judicial district for further proceedings in this case, including a detention hearing.

On September 14, 2022, defendant appeared in this district before Magistrate Judge Nannette A. Baker for an initial appearance and a detention hearing; at the defendant's request, the detention hearing was continued until September 19 before the undersigned. On September 15,

the Pretrial Services Office in this district filed its written bail report, Doc. 16, which also recommended that defendant be detained. The Court adopts and incorporates by reference into this order the facts set forth in both written bail reports.

During the September 19 detention hearing in this Court, counsel for both parties argued and proffered information on the issue of detention or release.

The Bail Reform Act places upon the government a substantial burden of proof regarding whether a person should be detained.

> Only if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions under subsection (c) [of 18 U.S.C. § 3142] will *reasonably assure* the defendant's appearance can a defendant be detained before trial.

*United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (quoting *United States v. Orta*, 760 F.2d 887, 891 & n. 20 (8th Cir. 1985) (en banc)).

In deciding the issue of detention or release, the rules of evidence are not strictly applied and the Court may consider unsworn proffers of information. *See* 18 U.S.C. § 3142(f); *United States v. Salerno*, 481 U.S. 739, 751 (1987) (the parties may "present information by proffer or otherwise"); *United States v. Agriprocessors, Inc.*, 2009 WL 290473 at *5 (N.D. Iowa 2009). The factors to be considered by the Court include the nature and circumstances of the alleged criminal activity, the weight of the evidence against defendant, his history and personal background, whether at the time of the offenses he was subject to release supervision, and whether the release of the defendant would pose a serious danger to any person or the community. 18 U.S.C. § 3142(g).

From the record, the Court makes the following findings of fact and conclusions of law. Defendant Griffin is 31 years of age. He was born in Atlanta, where he has lived for a total of 18 years. Defendant lived in St. Louis from 1994 to 2005, and then returned to Atlanta. His mother and siblings live in Atlanta. His father and a sister and defendant's children live in Georgia.

Defendant Griffin reported sporadic employment in Georgia and North Carolina. He has medical issues related to a highly communicable disease for which he is prescribed medication. He drinks alcohol occasionally and uses marijuana weekly.

Griffin resides with his mother, one of his sisters, and a nephew in Atlanta in a residence his family has lived in for 12 years. Two other sisters also live in this area. Defendant is unmarried but has had a long relationship with Junea Turner. Defendant has a sporadic employment history.

Defendant has a substantial criminal history. In 2007, at age 16, he was arrested for and ultimately found guilty of felony armed robbery as a juvenile. In June 2007, at age 16, he was arrested but not convicted for felony aggravated assault, felony armed robbery, highjacking a motor vehicle, and kidnapping. In July 2009, defendant was charged with felony probation violation. In December 2009 he was arrested for but acquitted of felony armed robbery, being a felon in possession of a firearm, and possessing a weapon while committing felony offenses. In May 2011, he was arrested and confined for 16 months for being a felon in possession of a firearm and for misdemeanor carrying a firearm. In September 2012 he was arrested for felony probation violation again. In November 2013 he was arrested for felony possessing a firearm as a felon and felony probation violation. In June 2017 he was arrested for two counts of felony probation violation.

In its motion for pretrial detention, counsel for the government proffered the following information. In St. Louis, weeks before the July 21, 2022, incident alleged in the indictment, a relative of defendant was murdered in St. Louis. V.J. was a suspect in this murder. After this murder, defendant Griffin and a relative traveled from Georgia to St. Louis and on July 21, 2022, defendant located V.J. near Pop's Market, in broad daylight in a heavily populated area of north St. Louis. Multiple surveillance cameras video recorded defendant arriving in a white car bearing Georgia license plates. Defendant was photographed by surveillance inside the retail establishment. After waiting approximately 20 minutes for an opportunity to ambush V.J., defendant Griffin was recorded by surveillance cameras chasing V.J. on foot and shooting at him with a mini Draco semi-automatic firearm in an alley behind Pop's Market, with V.J. searching for cover. Three still, color photos of defendant chasing and firing at V.J. were submitted to the Court in the detention hearing.

The government's proffer of information included the facts that, when St. Louis police detectives arrived on the scene of the shooting, V.J. was found deceased. Police collected multiple spent 7.62 x 39 mm shell casings, which ammunition is consistent with ammunition fired from a

3

mini-Draco semi-automatic firearm. The shell casings were collected in the area where defendant was video recorded firing at V.J. After the killing, license plate readers tracked defendant's white car leaving the St. Louis area. The government argues that defendant committed the brazen killing of V.J. in retribution for V.J. killing defendant's relative.

During the detention hearing, government counsel proffered information that law enforcement located the white vehicle, which had been at the scene of V.J.'s killing, in Georgia outside defendant's residence. In connection with defendant's arrest in Georgia, law enforcement searched defendant's white vehicle and his residence and located a Glock 23 and a Glock 17 firearms, a substantial number of rounds of ammunition, ammunition magazines, and a box for a mini-Draco semi-automatic firearm. During a Mirandized, post-arrest statement to law enforcement, defendant identified the person in still photos taken inside the St. Louis retail establishment as being himself. These photos showed defendant then wearing the white tee shirt with "G-Star" across the front, black pants, and a blue balaclava. Defendant, when questioned, did not explain why the individual photographed outside the establishment pursuing V.J., wearing the same clothing, was holding a Draco firearm. However, when the officer asked defendant how many times he shot V.J., defendant responded he did not recall or remember. Defendant, during the interview, did not deny being the shooter.

Also during the detention hearing, defense counsel argued that defendant is not charged with murder, only possession of the ammunition related to the shell casings; that defendant disputes being involved in the murder; and that the firearms seized in the Georgia residence could have belonged to defendant's mother or brother. Defense counsel argued defendant disputes that he was involved with any killing, that defendant could live with relatives in St. Louis or in Georgia under reasonable conditions. Counsel argued that defendant was in St. Louis for a funeral. Counsel has forwarded to the Court five letters from members of defendant's family attesting that he is a good person.

Upon the record before it, for the reasons set forth in the Pretrial Services bail report, the Court finds and concludes by clear and convincing evidence that the release of defendant Darius T. Griffin upon his own recognizance, an unsecured appearance bond, or any condition or combination of conditions of release will not reasonably assure the safety of the community. The

evidence that he traveled from Georgia to St. Louis to kill the person he believed killed a family member is very substantial, including being corroborated by defendant's post-arrest statements. 18 U.S.C. § 3142(b), (c).

Therefore,

**IT IS HEREBY ORDERED** that the motion of the United States that defendant DARIUS T. GRIFFIN be detained **[Doc. 5] is sustained.** Defendant is committed to the custody of the United States Marshals Service until further order.

**IT IS FURTHER ORDERED** that defendant be confined in a corrections facility, separate, to the extent practicable, from persons awaiting trial, serving sentences, or being held in custody pending appeal.

**IT IS FURTHER ORDERED** that defendant be allowed reasonable opportunity for consultation with counsel.

**IT IS FURTHER ORDERED** that on order of a Court of the United States or on request of an attorney for the United States, the person in charge of the corrections facility in which defendant is confined must deliver defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

                                             **/s/ David D. Noce**
                                    **UNITED STATES MAGISTRATE JUDGE**

Signed on October 3, 2022.